UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------- X
MARIA SARAVIA ALARCON, on behalf of herself   :
and all others similarly situated,   :
  :
               Plaintiff,   :
  :
     -against-   :      **No. 2:23 Civ. 447 (JSA)**
  :
GIANNELLA'S MODERN BAKERY LLC and   :
JOHN IMPARATO,   :
  :
           Defendants.   :
  :
---------------------------------------------------------------------- X

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

---

PECHMAN LAW GROUP PLLC
Louis Pechman, Esq.
Galen C. Baynes, Esq.
Camille A. Sanchez, Esq.
488 Madison Avenue - 17th Floor
New York, New York 10022
Tel.: (212) 583–9500

*Attorneys for Plaintiff Maria Saravia Alarcon,*
*the Putative Rule 23 Class, and the*
*Putative FLSA Collective*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ....................................................... 1

I.  Statement of Facts and Initial Procedural History ........................................ 1

II.  Settlement Terms and Structure ..................................................................... 2

III.  Class Notice and Dissemination ................................................................. 3

ARGUMENT ......................................................................................................... 5

I.  Final Approval of the Settlement is Warranted ............................................. 5

II.  Rule 23 Class Certification Requirements are Met for Settlement Purposes ................... 7

III.  The Proposed Settlement Is Fair, Adequate, and Reasonable ....................... 8

A.  The Proposed Settlement is Presumptively Fair ........................................ 8

B.  The *Girsh* Factors Weigh in Favor of Final Approval ................................. 10

1.  Complexity, Expense, and Duration of Litigation ................................ 10

2.  Reaction of the Class to the Settlement ............................................... 11

3.  Stage of Proceedings ........................................................................... 11

4.  Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial ...................................................................... 12

5.  Reasonableness of Recovery in Settlement ......................................... 13

C.  The Settlement is Fair and Reasonable Under the FLSA ............................ 14

IV.  The Proposed Service Awards Are Reasonable ............................................ 15

V.  The Court Should Approve Class Counsel's Request for Fees and Costs ....................... 17

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ...................................................................... 21
*Austin v. Pa. Dep't of Corr.*,
  876 F. Supp. 1437 (E.D. Pa. 1995).............................................................. 9
*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ........................................................................ 11
*Bonett v. Educ. Debt Servs., Inc.*, No. 01 Civ. 6528,
  2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003)................................ 12
*Bredbenner v. Liberty Travel, Inc.*, No. 09 Civ. 905 (MF),
  2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011).............................*Passim*
*Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16 Civ. 6054,
  2017 U.S. Dist. LEXIS 108487 (E.D. Pa. July 13, 2017) ................. 17, 20
*Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461,
  2012 U.S. Dist. LEXIS 40599 (D.N.J. Mar. 26, 2012) .......................... 20
*Bullock v. Adm'r of Estate of Kircher*,
  84 F.R.D. 1 (D.N.J. 1979) .......................................................................... 9
*Davis v. Essex Cty.*, No. 14 Civ. 122 (CCC) (JBC),
  2015 U.S. Dist. LEXIS 161285 (D.N.J. Dec. 1, 2015)................................ 4
*Dominguez v. Galaxy Recycling, Inc.*, No. 12 Civ. 7521 (LDW),
  2017 U.S. Dist. LEXIS 88855 (D.N.J. June 9, 2017)................... 8, 18, 20, 21
*D.R. by MR. v. E. Brunswick Bd. of Educ.*,
  109 F.3d 896 (3d Cir. 1997) ...................................................................... 15
*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .................................................................... 5, 6
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................... 7
*Farris v. JC Penney Co.*,
  176 F.3d 706 (3d Cir. 1999). ..................................................................... 15
*Flores v. CGI Inc.*, No. 22 Civ. 350 (KHP),
  2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022).......................... 16
*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .................................................................*Passim*
*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ...................................................................... 18
*Halley v. Honeywell Int'l, Inc.*,
  861 F.3d 481 (3d Cir. 2017) ...................................................................... 6
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................... 6
*Hegab v. Family Dollar Stores, Inc.*, No. 11 Civ. 1206 (CCC),
  2015 U.S. Dist. LEXIS 28570 (D.N.J. Mar. 9, 2015) .................. 11, 18, 21
*In re AT&T Corp. Securities Litigation*,
  455 F.3d 160 (3d Cir. 2006) ...................................................................... 21

*In re Cedant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................. 8, 11, 20
*In re Gen. Motors Corp.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................. 5, 11, 12
*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) .................................................................... 8
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ............................................................... 6, 7, 21
*In re Rite Aid Corp. Secs. Litig.*,
  396 F.3d 294 (3d. Cir. 2005) .................................................................. 21
*In re Safety Components, Inc. Secs. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ......................................................... 20, 21
*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................... 5
*Jamison v. Butcher & Sherrerd*,
  68 F.R.D. 479 (E.D. Pa. 1975) .................................................................. 9
*Lazy Oil, Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................ 5
*Lenahan v. Sears, Roebuck & Co.*, No. 02 Civ. 0045,
  2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) ............................... 14
*Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18 Civ. 417 (ENV) (MMH),
  2024 U.S. Dist. LEXIS 179236 (E.D.N.Y. Sep. 30, 2024) ........................ 16
*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................. 5, 14
*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012) .............................................................. 11
*Singleton v. First Student Mgmt. LLC,* No. 13 Civ. 1744 (JEI/JS),
  2014 U.S. Dist. LEXIS 108427 (D.N.J. Aug. 6, 2014) ............................. 12
*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ................................................................ 14
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................... 5
*Weissman v. Philip C. Gutworth, P.A.*, No. 2:14 Civ. 666 (WHW) (CLW),
  2015 U.S. Dist. LEXIS 8543 (D.N.J. Jan. 23, 2015) .................................. 6

**Rules**

Fed. R. Civ. P. 23 .........................................................................*Passim*
Fed. R. Civ. P. 30(b)(6) ................................................................................ 2

## PRELIMINARY STATEMENT

By this unopposed Motion, Plaintiff Maria Saravia Alarcon ("Plaintiff" or "Saravia")[1] respectfully requests that the Court grant final approval of the Settlement Agreement and Release (the "Settlement" or "Agreement") entered between Plaintiff and Defendants Giannella's Modern Bakery LLC and John Imparato ("Defendants") and preliminarily approved by the Court on April 14, 2025. ECF No. 64. The proposed Settlement resolves *bona fide* disputes on a class-wide basis and is fair, reasonable, and adequate resolution that satisfies all criteria for settlement approval.

## FACTUAL AND PROCEDURAL HISTORY

### I.    Statement of Facts and Initial Procedural History[2]

Saravia is a former bakery oven operator at Giannella's Modern Bakery LLC ("Giannella's"), a wholesale bakery located at 298 21st Avenue, Paterson, New Jersey, 07501. Pechman Decl. ¶ 4. Saravia filed her Complaint in this Action on January 26, 2023, and a First Amended Complaint ("FAC") on March 31, 2023. *Id*. ¶ 7. Through her FAC, Saravia alleged that Defendants paid her and other similarly situated employees on a straight-time basis that failed to compensate her with overtime pay at a rate of 1.5 times her regular hourly rate for hours worked over forty each workweek in violation of the Fair Labor Standards Act ("FLSA") and New Jersey Wage and Hour Law ("NJWHL"), and sought to recover unpaid wages on behalf of herself and similarly situated non-managerial wholesale facility workers. *Id*. ¶¶ 8-9.

Following initial paper discovery and the deposition of Defendant Imparato as FRCP 30(b)(6) representative of Giannella's and the Parties' participation in a settlement conference before the court

---

[1]  All capitalized terms and abbreviations used in this Memorandum are defined in the Parties' Agreement (Ex. 1 to the Pechman Declaration) and in the Pechman Declaration.

[2] Plaintiff respectfully refers the Court to her Motion for Preliminary Settlement Approval and supporting documents, ECF Nos. 62-63, and to the Pechman Declaration, for a full recitation of factual and procedural history.

on January 9, 2024, the Parties stipulated to the conditional certification of an FLSA collective and negotiated an FLSA notice and consent to sue form for distribution to putative FLSA collective members. *See id.* ¶¶ 13-21. Five individuals—Dilsy Griselda Salvatierra Perez, Ana Pacheco, Karla Vidal, Santos Hugo Najera Lopez, and Oralia Pacheco (the "Opt-In Plaintiffs")—opted into the Action by signing and returning consent to sue forms. *Id.* ¶ 25. Defendants served document requests and interrogatories on each of the Opt-In Plaintiffs, to which the Opt-In Plaintiffs responded. Defendants took the depositions of Plaintiff and each of the Opt-In Plaintiffs in October 2024. *Id.* ¶ 28.

The Parties participated in a full day class wide mediation before Mr. Briton on January 14, 2025, during which they successfully reached a settlement in principle for the total sum of $1,400,000 to fully resolve the Action on a class basis. *Id.* ¶ 33. The Parties informed the Court of their settlement in principle on January 31, 2025, and thereafter continued to negotiate the terms of their written Settlement Agreement, which was fully executed on March 20, 2025. *Id.*

## II.    Settlement Terms and Structure

The Settlement Agreement provides for full resolution of the FLSA collective action claims and the New Jersey state law class action claims during the liability period from January 1, 2019, through December 31, 2023. *See generally* Ex. 1 to Pechman Decl. The principal terms of the Settlement reached with the aid of Mediator Briton are as follows:[3]

The Class Members are Plaintiff, the Opt-In Plaintiffs, and all manual workers including oven operators, bakers, packers, and cleaners paid on an hourly basis who worked for Giannella's Modern Bakery LLC at any time from January 1, 2019, through December 31, 2023. Pechman

---

[3] Plaintiff respectfully refers the Court to the Agreement, Ex. 1 to the Pechman Declaration, and to the Plaintiff's Preliminary Approval Motion, ECF No. 62-1 at 4-6, for a full recitation of the Agreement's terms.

Decl. ¶ 34(a). The Net Settlement Fund is equal to the Settlement Amount after deductions for: (1) the Settlement Claims Administrator Rust Consulting Inc.'s ("Rust") fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) the Court-approved Service Awards to Plaintiff and Opt-In Plaintiffs. *Id.* ¶ 34(f). Each Participating Class Member will receive a percentage of the Net Settlement Fund correlating to the number of weeks that the Participating Class Member worked for Defendants within the Liability Period. *Id.* Following the Court's final approval, Rust will issue a Settlement Check to each Class Member. *Id.* Participating Class Members will release their state law wage and hour claims under the NJWHL in exchange for their receipt of a Settlement Check. *Id.* ¶ 34(g). By cashing their Settlement Checks, Participating Class Members opt-in to the Action, become FLSA Collective Members, and release all wage and hour claims under the FLSA. *Id.* Participating Class Members will have 180 days from the date of the mailing of the Settlement Checks to cash them or request a replacement. *Id.*

## III.    Class Notice and Dissemination

Following entry of the Court's Preliminary Approval Order, ECF No. 64, the parties provided Rust with the approved Class Notice and last known contact information for 126 Class Members. *Id.* ¶ 38. Rust disseminated the Class Notice in English and Spanish to 126 Class Members for whom mailing addresses were available by First Class Mail on May 5, 2025. *Id.* ¶¶ 39-41.[4] Rust later successfully disseminated the Class Notice to two additional Class Members identified by counsel for the parties, resulting in Notice dissemination to a total of 128 Class Members. *Id.* ¶ 42.

The Notices further informed Class Members in plain language about: the nature of the Action and Settlement and the claims and disputed issues; the Settlement Amount; the basis and

---

[4] Rust further disseminated a text notice to 53 Class Members for whom telephone numbers were available. *Id.* ¶ 41.

calculation method of the Individual Settlement Shared; the amounts requested for attorneys' fees and costs, Plaintiff and Opt-In Plaintiffs' service awards, that a reasonable amount would be requested for Rust's fees and expenses; and their right to be represented by Class Counsel or retain individual counsel at their expense. *Id.* ¶ 43.

The Notices informed the Class Members of their right to opt out or object to the Settlement within 90 days of the mailing of the Notices. *Id.* The Notices also informed Class Members that: (1) they will receive a Settlement Check in exchange for releasing their NJWHL wage-and-hour claims; (2) only Class Members who endorse their Settlement Check release their FLSA wage-and-hour claims; and (3) Class Members will have 180 days to cash their Settlement Checks. *Id.* ¶ 44.

Following dissemination of the Notices, Rust provided the parties with weekly settlement administration updates summarizing, inter alia, the number of Notices mailed and returned as undeliverable, the number of skip traces performed and number of Notices that were remailed, and the number of Class Members who opted out of or objected to the Settlement. *Id.* ¶ 46. As of this Motion, Rust has been unable to deliver Notices to fifteen of the total 128 Class Members. *Id.* ¶ 45. No Class Member has objected to or opted out of the Settlement. *Id.* ¶ 47. Following Court approval, Rust will continue to perform settlement administration duties, including disseminating Settlement Checks and tax documents and tracking the number of Class Members who deposit their Settlement Checks and become FLSA Collective Members. *Id.* ¶ 48.

**ARGUMENT**

**I.      Final Approval of the Settlement is Warranted**

Federal Rule of Civil Procedure ("FRCP") 23(e) requires class action settlements to be approved by a district court.  Fed. R. Civ. P. 23(e).  Likewise, FLSA settlements generally require approval by the district court.  *See, e.g., Davis v. Essex Cty*., No. 14 Civ. 122 (CCC) (JBC), 2015 U.S. Dist. LEXIS 161285, at *5 (D.N.J. Dec. 1, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  As such, courts must determine that a settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and, if so, may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.  Similarly, in reviewing a proposed class action settlement, courts consider whether the settlement is "fair, adequate, and reasonable." *Lazy Oil, Co. v. Witco Corp*., 95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999); *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995).  In conducting this review, courts are mindful that settlement is the preferred method for resolving class action lawsuits. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Federal courts, including courts in the Third Circuit, strongly favor resolution of collective and class action lawsuits by settlement.  *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–595 (3d Cir. 2010) (recognizing a "strong presumption in favor of voluntary settlement," which is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (same); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should

therefore be encouraged."). That is because, by reaching a reasonable settlement prior to dispositive motions or trial, parties to class action litigation avoid significant expense and delay and instead ensure recovery for the class. *Ehrheart,* 609 F.3d at 594–95 ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

Approval of a proposed class action settlement is subject to the discretion of the district court. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard 'is left to the sound discretion of the district court.'") (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998)); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (same). In exercising its discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the Court has already certified the Rule 23 New Jersey Class and FLSA Collective Action for settlement purposes only. *See* ECF No. 64. The Court is now asked to take the second step in the class action settlement analysis at the final fairness hearing to determine whether the Agreement is fair, reasonable, and adequate. *See Weissman v. Philip C. Gutworth, P.A.*, No. 2:14 Civ. 666 (WHW) (CLW), 2015 U.S. Dist. LEXIS 8543, at *4 (D.N.J. Jan. 23, 2015). For the reasons set forth below, the Court should find that the Agreement is a fair, reasonable, and adequate resolution of the disputed claims in this Action; grant Class Counsel its requested attorneys' fees and costs requested; grant Plaintiff's and the Opt-In Plaintiffs' requested Service Awards, approve Rust's request for Claims Administrator fees and expenses, and adopt the proposed Final Approval Order attached as Exhibit 4 to the Pechman Declaration in its entirety.

## II.     Rule 23 Class Certification Requirements are Met for Settlement Purposes

Plaintiff respectfully refers the Court to her Preliminary Approval Motion, which explains in detail that all Rule 23(a) and (b) class action certification requirements are met here for settlement purposes.  *See* ECF No. 62-1 at 8-13.

The notice requirements of Rule 23(c)(2)(B) and 23(e) are also satisfied.  FRCP 23(c)(2) "requires notice to be given to all potential members of a Rule 23(b)(3) class informing them of the existence of the class action, the requirements for opting out of the class and/or entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class."  *In re Prudential*, 148 F.3d at 326; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections").    Notices must be disseminated in a manner that is "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). Mailing of notices to each class member satisfies this requirement.  *See Eisen*, 417 U.S. at 175.

As set forth above, the Class Notice approved by the Court for dissemination in this Action thoroughly apprised Class Members of all information needed for them to make an informed decision regarding participation in, exclusion from, or objection to the Settlement.  The Class Notice set forth:  (1) the nature of the action, (2) a definition of the certified class,  (3) the class claims, issues, and defenses, (4) the rights that will be waived in exchange for opting out or remaining in the class and/or doing nothing and opting in as an FLSA Collective member in exchange for endorsing a Settlement Check, (5) how a Class Member may exclude themselves or object to the Settlement, including the time and manner  for  to request an  exclusion or make an

objection, (6) Class Members' option to be represented by Class Counsel or retain separate counsel at their own expense, and (7) the binding effect of class judgment on members under Rule 23(c)(3). Pechman Decl. ¶¶ 43-44. The Class Notice also informed each Class Member of the method for calculation of Individual Settlement Shares, the date, time, and location of the Final Approval Hearing, and how to obtain a copy of the full Agreement and other documents in the Action. *Id.*

The Claims Administrator mailed Class Notices to all 128 Class Members and disseminated text notice to 53 Class Members for whom telephone numbers were available. *Id.* ¶ 41-42. Twenty-one mailings were returned as undeliverable. *Id.* ¶ 45. After performing address traces to attempt to locate and notify all Class Members, the Claims Administrator successfully disseminated Class Notices to all but fifteen of the 128 Class Members. *Id.* Rust's efforts in this regard were reasonable, and the Court should accordingly find that the notice dissemination process satisfied the requirements of FRCP 23 and due process. *See Dominguez v. Galaxy Recycling, Inc.*, No. 12 Civ. 7521 (LDW), 2017 U.S. Dist. LEXIS 88855, at *6 (D.N.J. June 9, 2017) (approving settlement where 135 of 614 individuals could not be located or notified).

## III.     The Proposed Settlement Is Fair, Adequate, and Reasonable

### A.     The Proposed Settlement is Presumptively Fair

A class action settlement is presumptively fair if: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). The presumption of fairness applies to the Settlement here.

First, the proposed Settlement was a product of prolonged arm's length negotiations

following substantial discovery. As is explained in more detail below, Class Counsel calculated Defendants' highest potential exposure after formal document discovery, the analysis of payroll records relevant to the Class Members, and information developed through the deposition testimony of Defendants, Plaintiff, and the Opt-In Plaintiffs. Pechman Decl. ¶¶ 14-15, 28-32. The Parties disputed, and continue to dispute, the assumptions underlying the damages calculations. *Id.* ¶ 53-57. After an initial unsuccessful settlement conference before the Court, the Parties engaged in a full day of extensive arm's length negotiations before an experienced neutral mediator, Roger Birton, Esq., resulting in the Parties' settlement in principle. *Id.* ¶ 20, 33.

Second, the Parties' attorneys are competent and experienced in wage-and-hour collective and class actions. Class Counsel is a well-respected New York City labor and employment law firm that has litigated over 300 wage-and-hour cases on behalf of both employees and management. *See generally id.* ¶¶ 64-79. Defendants are represented by Cleary Giacobbe Alfieri Jacobs LLC, which is experienced in labor and employment litigation. Accordingly, the Parties' attorneys have the experience necessary to conduct a fair and adequate assessment of the strengths and weaknesses of their clients' respective claims and defenses in the Action and, based on that assessment, to recommend a reasonable settlement. Because of this and Class Counsel's extensive prosecution of the litigation, the Parties' recommendation of settlement approval is entitled to significant weight. *See, e.g.*, *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) (counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

Finally, as addressed more fully below, there have been zero requests for exclusion and zero objections from Class Members in this case, demonstrate the Class Members' support for the Settlement. Accordingly, Court should find that the Settlement is presumptively fair and reasonable.

**B.    The *Girsh* Factors Weigh in Favor of Final Approval**

At the final approval stage, courts in the Third Circuit also consider the following factors, set forth in *Girsh v. Jepson*:

1)   the complexity, expense, and likely duration of the litigation;
2)   the reaction of the class to the proposed settlement;
3)   the stage of the proceedings, and amount of discovery completed;
4)   risks of establishing liability;
5)   risks of establishing damages;
6)   risks of maintaining a class through trial;
7)   the ability of defendant to withstand a greater judgment;
8)   the range of reasonableness of the settlement fund in light of the best possible recovery; and
9)   the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156–57 (3d Cir. 1975). The *Girsh* factors support settlement approval in this case.

### 1.    Complexity, Expense, and Duration of Litigation

The Settlement avoids further litigation, class certification and dispositive motion practice, trial, and possible appeals, all of which entail significant expenses. As of the date of this filing, the Action has been ongoing for over two years and seven months. *See* ECF No. 1, filing date of January 26, 2023. The Parties have already incurred significant expenses litigating the Action.

If the Action continues, it will take substantially more time before class certification and dispositive motions are decided and trial begins. By reaching a mutually acceptable settlement, the Parties have reduced their risks and avoided significant expense and delay. *See Ripley v. Sunoco,*

*Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012) (finding first *Girsh* factor in favor of settlement approval where approval was sought before dispositive motion practice). The first *Girsh* factor weighs in favor of final approval.

### 2.    Reaction of the Class to the Settlement

It bears underscoring that, following successful dissemination of Class Notices to all but fifteen of the total 128 Class Members, there have been zero requests for exclusion from and zero objections to the Settlement by the Class Members. Pechman Decl. ¶¶ 45-47. This overwhelmingly positive reaction of the Class Members to the Settlement strongly supports settlement approval. *See, e.g.*, *In re Cedant Corp.*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of Settlement . . . ."); *In re Gen. Motors Corp.*, 55 F.3d at 812 ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'") (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)); *Hegab v. Family Dollar Stores, Inc.,* No. 11 Civ. 1206 (CCC), 2015 U.S. Dist. LEXIS 28570, at *16 (D.N.J. Mar. 9, 2015) ("The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves the settlement."). The second *Girsh* factor weighs heavily in favor of final approval.

### 3.    Stage of Proceedings

The parties must have an "adequate appreciation of the merits of the case before negotiating." *In re Cedant Corp.*, 264 F.3d at 235 (quotation marks omitted). The Parties exchanged extensive payroll data and took the deposition of Defendants, Plaintiff and the five Opt-In Plaintiffs prior to reaching the Settlement here. The resulting information was necessary to calculate damages in this Action and to determine whether class-wide litigation was possible. In

11

light of the substantial discovery conducted, the Parties were able to negotiate at arm's length with "a clear view of the strengths and weaknesses of their case." *See Bonett v. Educ. Debt Servs., Inc.*, No. 01 Civ. 6528, 2003 U.S. Dist. LEXIS 9757, at *17 (E.D. Pa. May 9, 2003) (internal citation and quotation marks omitted).    Accordingly, the third *Girsh* factor weighs in favor of final approval.

### 4.    Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial

Continuing the Action would expose the Parties to significant litigation risks associated with the fourth, fifth, and sixth *Girsh* factors, all of which militate in favor of granting final approval.    *See, e.g.*, *Singleton v. First Student Mgmt. LLC,* No. 13 Civ. 1744 (JEI/JS), 2014 U.S. Dist. LEXIS 108427, at *16-18 (D.N.J. Aug. 6, 2014) (listing risks of proceeding with class action involving off-the-clock wage claims).    Although the Parties believe that they have strong claims or defenses, they recognize that they also face significant litigation risks should the Action continue.    Given the numerous factual disputes, which go both to the merits of the Action and to the calculation of damages, the Court should allow the Parties to "yield[] the[ir] highest hopes in exchange for certainty and resolution." *In re Gen. Motors*, 55 F.3d at 806.

While Plaintiff believes that her claims are strong, there is a risk that a class may not be certified absent the Settlement.    Defendants have contended that certain Class Members should be excluded because they had job duties that differed from that of the Plaintiff.  Pechman Decl. ¶ 55.  Moreover, because Plaintiff alleges that overtime wages were paid in cash at a straight time rate—a claim which Defendants dispute—payroll records reflecting overtime wages paid to Plaintiff and the Class Members do not exist.  *Id*. ¶ 56. Accordingly, the credibility of the Parties and trial witness both with respect to the quantity of overtime hours worked and payment received for them will be paramount at a trial in this Action, which entails intrinsic risk.    To avoid the risks

inherent in continued litigation, as well as the uncertainty of collective and class action motion practice, the Parties agreed to the Settlement. Under these circumstances, the fourth, fifth, and sixth *Girsch* factors weigh heavily in favor of final settlement approval.

### 5.    Reasonableness of Recovery in Settlement

The reasonableness of the Settlement in light of the highest potential recovery and the litigation risks discussed above weigh strongly in favor of final approval. Moreover, the size of the Settlement presented a fiscal challenge to Defendants, who to date are continuing to fund the Settlement with final funding anticipated by October 15, 2025, evidencing that Defendants would have difficulty withstanding a higher judgment (the seventh *Girsh* factor). Pechman Decl. ¶ 59.

Plaintiff's Counsel calculated total unpaid wage damages for the Class Members to be $1,621,653.85. In addition to unpaid wage damages, Plaintiff's counsel calculated that the Class Members would be entitled to recover $3,243,307.71 in liquidated damages, equal to 200% of the unpaid wages due under the NJWHL. Pechman Decl. ¶ 32. Plaintiff's Counsel's assumptions with respect to the number of overtime hours worked by Class Members, the rates paid for overtime hours worked, and any entitlement to liquidated damages (which requires a willfulness showing) were forcefully disputed by Defendants. *Id.* ¶ 53-57.

In light of the uncertainties and costs associated with protracted litigation, the Parties agreed to settle the Action for $1,400,000, a substantial recovery equal to approximately 86% of Plaintiff's Counsel's unpaid wage exposure calculation for the Class. *Id.* ¶ 58. The Settlement Payment represents a substantial and fair value in light of the attendant risks of litigation. Were Defendants to fully prevail on their defenses, the Class Members would recover nothing. Moreover, if Defendants were to successfully decertify the class, Saravia would have to litigate her claims alone and would not recover the Settlement Payment.

It is well settled that a settlement of a class action may be appropriate even where the settlement is only a percentage of the ultimate total exposure should the case be won at trial. *See Lenahan v. Sears, Roebuck & Co.*, No. 02 Civ. 0045, 2006 U.S. Dist. LEXIS 60307, at *47-49 (D.N.J. July 10, 2006) (approving $15 million settlement, though maximum exposure at trial could have been as high as $104 million, because of the "magnitude of the risks in litigation"). In deciding reasonableness, courts do not speculate as to the highest possible recovery. On the contrary, courts consider the risk of little or no recovery at all. *See Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 240 (D.N.J. 2005) ("This Settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation— little or no recovery at all."). In light of the risks and assumptions discussed above, the seventh, eighth, and ninth *Girsch* factors weigh heavily in favor of final approval.

### C.    The Settlement is Fair and Reasonable Under the FLSA

 "To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner v. Liberty Travel, Inc.*, No. 09 Civ. 905 (MF), 2011 U.S. Dist. LEXIS 38663, at *50-51 (D.N.J. Apr. 8, 2011) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). Courts typically regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A proposed settlement should be approved if it "represents a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The Parties dispute whether: (1) Defendants violated the FLSA and New Jersey laws by allegedly failing to pay Class Members overtime wages; (2) Defendants' alleged violations of the

FLSA and New Jersey laws were willful; and (3) Saravia can maintain a collective action on behalf of all allegedly similarly situated Class Members in light of differences in the job positions of certain putative Class Members.  Pechman Decl. ¶¶ 53-57.  Assuming liability were established, the Parties further dispute the extent of damages owed to the putative Class Members.  Thus, the proposed Settlement resolves *bona fide* disputes.  *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *51 (approving settlement where "'disagreements 'over hours worked or compensation due' clearly establish[d] a bona fide dispute" and the "institution of a federal court litigation" coupled with "aggressive prosecution and strenuous defense demonstrate[d] the palpable bona fides of this dispute").  As discussed above, the Settlement represents a fair resolution of the Parties' disputes in light of the risks of litigation discussed above, even though greater recovery could be obtained if Plaintiff was 100% successful in this Action through trial and appeals.

Finally, public policy strongly favors settlements such as this one because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).  The Settlement here is consistent with this policy, because it resolves a pending action on behalf of a class of 128 employees and avoids a potential jury trial and appeals. Because the Settlement represents a fair resolution of *bona fide* disputes, public policy weighs heavily in favor of its approval.  *Id.*; *see also Farris v. JC Penney Co.,* 176 F.3d 706, 711 (3d Cir. 1999).

## IV.    The Proposed Service Awards Are Reasonable

Saravia, as Class Representative, and the Opt-In Plaintiffs, who participated extensively in this Action, should be awarded for their contributions. Service or incentive awards "are fairly common in class action lawsuits involving a common fund for distribution to the class." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *63. The purpose of incentive awards is to

"compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of the class action litigation,' and to 'reward the public service' for contributing to the enforcement of mandatory laws." *Id.* (internal citations omitted). "Recognition payments are particularly appropriate in the employment context because former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18 Civ. 417 (ENV) (MMH), 2024 U.S. Dist. LEXIS 179236, at *40 (E.D.N.Y. Sep. 30, 2024)

Saravia, the sole named Plaintiff, was directly involved in the litigation since before its filing by providing all facts necessary for the drafting and revision of the Complaint, including by providing descriptions of the work duties she and other Class Members performed and information (verbal and documentary) regarding Defendants' alleged wage violations. She participated in paper discovery and responded to interrogatories, was deposed, attended a settlement conference before the Court, assisted counsel during the FLSA notice dissemination phase, and was actively involved in settlement discussions. Pechman Decl. ¶ 61. Saravia accepted the tangible risks and burdens associated with being the only named Plaintiff in this Action. *See, e.g., Flores v. CGI Inc.*, No. 22 Civ. 350 (KHP), 2022 U.S. Dist. LEXIS 192572, at *30-31 (S.D.N.Y. Oct. 21, 2022) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person presents risks to the class representative as well.") (quotation omitted).

The Opt-In Plaintiffs have also made significant contributions to the litigation. Each Opt-In Plaintiff responded to requests for the production of documents and interrogatories, was deposed, and consulted with Plaintiff's Counsel throughout settlement negotiations. Pechman Decl. ¶ 62.

In light of the contributions that Saravia and the Opt-In Plaintiffs made in prosecuting this Action and securing the proposed Settlement on behalf of the Class Members, the Court should approve their requested Service Awards. *See, e.g.*, *Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16 Civ. 6054, 2017 U.S. Dist. LEXIS 108487, at *19 (E.D. Pa. July 13, 2017) (approving $10,000.00 service award to each plaintiff involved in commencing action and "willing to assume the risk associated with being a named plaintiff in a class action"). The $15,000 Service Award to Saravia and $2,000 Service Awards to the Opt-In Plaintiffs requested are well within the range of those regularly approved in class actions in the Third Circuit. *See, e.g., Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *66-67. (collecting cases in which class representatives were awarded between $3,000, on the low end, to $30,000, on the high end, as service awards). It bears noting that no Class Member has objected to the requested Service Awards, which were set forth in the Class Notice. Pechman Decl. ¶ 63.

## V.    The Court Should Approve Class Counsel's Request for Fees and Costs

Class Counsel requests attorneys' fees equal to 33.33% of the Settlement Fund, or $466,666.67. Pechman Decl. ¶ 80. Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Action purely on a contingency fee basis. If the Action resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred in the prosecution of the Action. *Id.* ¶ 66. To date, Class Counsel has dedicated 351.1 hours of professional time litigating this matter. Pechman Decl. ¶ 81.

Class Counsel's fees are requested as a percentage of settlement fund. This is the preferred method for courts in the Third Circuit in calculating attorneys' fees and costs in class actions. *See, e.g.*, *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52-53 (stating "percentage-of-recovery

method to award attorneys' fees in common fund cases" is the "prevailing methodology used by courts in this Circuit for wage-and-hour cases"); *Brown*, 2017 U.S. Dist. LEXIS 108487, at *14 (same, and reasoning it "is also more appropriate to use the percentage-of-recovery method where, as here, the settlement releases Defendant from both damages and attorneys' fees"). Courts within the Third Circuit examine the following factors when analyzing the reasonableness of proposed class counsel fees as a percentage of the fund:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *54. In addition to these factors, courts should "cross-check" fee calculations against the lodestar award method. *Gunter*, 223 F.3d at 195. All of these factors favor approval of Class Counsel's fee request.

First, the Settlement Fund of $1.4 million was created to benefit 128 Class Members who are eligible to receive a Settlement Share. Second, all but fifteen of the 128 Class Members received the Class Notice, and no Class Member has filed objections to or a requests for exclusion from the Settlement or the Class Counsel's fee request, which was set forth in the Class Notice. Pechman Decl. ¶¶ 45, 85. "The absence of objections by settlement class members to the fees requested by class counsel strongly supports approval." *Hegab*, 2015 U.S. Dist. LEXIS 28570, at *31; *see also Dominguez*, 2017 U.S. Dist. LEXIS 88855, at *21 ("No class member has asserted any

18

objection to the proposed fee award, and the Court consequently finds that this factor weighs in favor of approval.").

Third, Class Members are represented by experienced wage-and-hour counsel who have invested significant time and resources into the litigation and resolution of the Action. *See* Pechman Decl. ¶ 64-85. Class Counsel has litigated hundreds of wage-and-hour cases on behalf of both employees and management. *Id.* ¶ 64, 70. Moreover, Class Counsel's skill and efficiency is evidenced from the fair and reasonable Settlement achieved in this Action despite the significant defenses that Defendant asserted, as discussed above. *See, e.g.*, *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *56 ("The skill and efficiency of class counsel is 'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.") (citation omitted).

Fourth, the Action has been ongoing for over two and half years. The Action centers on heavily disputed legal and factual issues, including among others, the quantity of overtime hours worked by Class Members, the willfulness of any alleged wage and hour violations by Defendants, and Plaintiff's ability to maintain the Action as a class action. Pechman Decl. ¶ 51-57. To efficiently resolve these disputes, experienced counsel exchanged and analyzed all damages-related documents and engaged in early deposition practice, enabling them to focus on settlement negotiations and the efficient resolution of this matter. Despite these challenges and the uncertainties and costs of continued litigation, Class Counsel secured a Settlement equivalent to 86% of their total unpaid wages exposure calculation. *Id.* ¶ 58.

19

The fifth and sixth *Gunter* factors also weigh in favor of approval of counsel's fee request. Class Counsel undertook this representation purely on a contingency fee basis. Pechman Decl. ¶ 66. As noted, there is a genuine risk of non-payment "due to the difficulty in establishing liability at trial." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *58. Defendants presented strong defenses that, "if successful, could relieve the company from any liability. In short, class counsel undertook substantial risk that the litigation would yield little or no recovery and leave them completely uncompensated for their time." *Id.* In the face of these risks, Class Counsel dedicated over 350 professional hours and incurred out-of-pocket costs of $3,096 while prosecuting the Action. *See* Pechman Decl. ¶¶ 81, 84.

The 33.33% award requested is consistent with awards that courts in the Third Circuit routinely approve. *See, e.g.*, *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52, 61-63 (awarding 32.6% of settlement fund, totaling $978,353.16, plus costs of $11,646.84, in wage-and-hour class action); *Brown*, 2017 U.S. Dist. LEXIS 108487, at *16-17 ("[T]he Honorable Jose Linares has stated that '[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund' in common fund cases and then cited several cases in which awards in the range of one-third were awarded.") (quoting *Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012 U.S. Dist. LEXIS 40599, at *36 (D.N.J. Mar. 26, 2012) ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases.") (collecting cases))). District courts reduce fee percentages mostly in cases involving very large settlement funds. *See, e.g.*, *In re Cedant Corp. Litig.*, 264 F.3d at 241– 42; *Dominguez*, 2017 U.S. Dist. LEXIS 88855, at *23 n.5 ("[F]ee awards in cases with very large recoveries, *e.g.*, over $100 million, have been of lower percentages."); *In re Safety Components, Inc. Secs. Litig.*, 166 F. Supp. 2d 72,

101–02 (D.N.J. 2001) (listing various cases in which courts awarded 33.3% of large settlement funds). Here, the Settlement Fund is $1.4 million and the one-third percentage requested is reasonable.

Finally, a lodestar cross-check confirms that the fee requested is reasonable. The cross-check is performed by calculating the "lodestar multiplier," which equals the fee requested as a percentage of the fund divided by the lodestar. *In re AT&T Corp. Securities Litigation*, 455 F.3d 160, 164 (3d Cir. 2006); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *61. Lodestar multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341; *Dominguez*, 2017 U.S. Dist. LEXIS 88855, at *24 ("Percentage of recovery fees have been approved when they represent up to four times what the lodestar recovery might represent."). This is because lodestar multipliers account for "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d. Cir. 2005). "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306–07.

Here, Class Counsel's lodestar, equal to each attorney's billable hourly rate multiplied by his or her total hours worked in the Action, is $181,762.50. Pechman Decl. ¶ 81. The lodestar multiplier is 2.6. *Id.* ¶ 86. Accordingly, the lodestar multiplier falls well within the acceptable range of one to four and, as a cross-check, further supports approval of Class Counsel's requested fees. *Hegab*, 2015 U.S. Dist. LEXIS 28570, at *36-39.

The Court should further approve Class Counsel's request for reimbursement of $3,096 in costs incurred in the prosecution this Action. Pechman Decl. ¶ 84. "Counsel for a class action

is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l, Inc. Secs. Litig.*, 166 F. Supp. 2d at 108 (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)). The incurred expenses are documented and explained in the Pechman Declaration, Pechman Decl. ¶ 84, and Class Counsel respectfully requests that they be awarded by the Court. Moreover, in recognition of the services that it has performed and will continue to perform on behalf of the Class, Claims Administrator Rust Consulting Inc.'s request for fees of $8,898 should be approved. *Id.* ¶¶ 86-87 and Ex. 2 to Pechman Decl.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her unopposed Motion in its entirety and enter the Proposed Final Approval Order, attached to the Pechman Declaration as Exhibit 4.

Dated:   New York, New York
         October 1, 2025

PECHMAN LAW GROUP PLLC

By:     /s/ Galen C. Baynes
        Louis Pechman
        Galen C. Baynes
        Camille A. Sanchez
        488 Madison Avenue, 17th Floor
        New York, New York 10022
        Tel.: (212) 583-9500
        pechman@pechmanlaw.com
        baynes@pechmanlaw.com
        sanchez@pechmanlaw.com
        *Attorneys for Plaintiff, the
        Putative Rule 23 Class, and
        the Putative FLSA Collective*